UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CYNTHIA E. PRESS, | CV. 08-1089-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant, | |

ACOSTA, Magistrate Judge:

*Introduction*

Claimant Cynthia E. Press ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-1383(f). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Following a careful review of the record, the court concludes that the Administrative Law Judge ("ALJ") did not comply with Social Security Ruling ("SSR") 00-4p's requirements. Accordingly, this case is remanded so that the ALJ can determine whether the jobs identified by the Vocational Expert ("VE") are consistent with the definitions in the Dictionary of Occupational Titles ("DOT") and Claimant's limitations.

*Procedural History*

On July 16, 2004, Claimant protectively filed an application for SSI, alleging disability beginning January 6, 2003. The claim was denied initially on October 14, 2004, and upon reconsideration on December 2, 2004. On October 4, 2006, a hearing was held before an ALJ, who issued a decision on October 27, 2006, finding Claimant not disabled. Claimant timely requested review of this decision by the Appeals Council. On August 29, 2008, the Appeals Council denied this request making the ALJ's decision the Commissioner's final decision, from which Claimant now appeals to this court.

*Standard of Review*

This court must affirm the Commissioner's decision if it is based on proper legal standard and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881

F.2d 747, 750 (9th Cir. 1989); *Andrews*, 53 F.3d at 1039-40.  The reviewing court may not substitute its judgment for that of the Commissioner.  *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews*, 53 F.3d at 1039.  In determining a claimant's residual functional capacity ("RFC"), an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins*, 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

*Summary of the ALJ's Findings*

The ALJ engaged in the five-step "sequential evaluation" process when he evaluated Claimant's disability, as required.  *See* 20 C.F.R. § 416.920; *see also Bowen v. Yukert*, 482 U.S. 137, 140 (1987).

I.   Steps One and Two

At Step One, the ALJ concluded that Claimant had not engaged in any substantial gainful activity since the onset of her alleged disability.  (Tr. 11.)  At Step Two, the ALJ determined that Claimant had the following severe impairments: degenerative disc disease at L5-S1 with a mild disc bulge and mild congenital central stenosis at L5-S1, Post Traumatic Stress Disorder ("PTSD"), anxiety symptoms, asthma, obesity, and a history of substance abuse.  (Tr. 21.)  He also found that "[o]ther symptoms and complaints appear in the record from time to time, but there is nothing to show that they are more than transient or cause significant vocational limitations.  Any such

impairment is not severe." (Tr. 22.)

    a.    *L5-S1 Related Impairments*

In May of 2004, Claimant complained of pain caused by a fall from a sport utility vehicle. (Tr. 21.) Although her X-rays were negative, it was recommended that Claimant obtain an MRI. (Tr. 21.) An MRI of the lumbar spine, dated May 13, 2004, revealed degenerative disc disease at L5-S1 with a mild bulge that could irritate the S1 nerve roots. (Tr. 21.) It was also noted that there may be mild congenital central stenosis at L5-S1. (Tr. 21.)

    b.    *PTSD and Anxiety*

Medical treatment notes reveal Claimant has displayed symptoms of PTSD and anxiety as a result of several abusive relationships. (Tr. 22.) She has received counseling at Cascadia Behavioral Healthcare. (Tr. 22.)

    c.    *Asthma, Obesity, and Substance Abuse*

Claimant has a history of asthma that is well controlled with inhalers. (Tr. 22.) In addition, medical treatment notes reveal Claimant has been encouraged by her treating doctors to lose weight due to her back pain. (Tr. 22.) Records show that she initially lost weight down 264 pounds, however, at the hearing she reported that her weight had increased again to 280 pounds. (Tr. 22.) Claimant also has a history of substance abuse including methamphetamine and marijuana, but is in self-reported remission. (Tr. 22.)

II.    Step Three

At Step Three, the ALJ concluded that "[C]laimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (the "Listings"). (Tr. 22.) In particular, the ALJ considered

Sections 12.00C, 12.06, and 12.09 of Appendix 1. (Tr. 22.) The ALJ employed the psychiatric review technique described in Section 12.00C, in deciding whether the impairments met the functional limitation required for severity under criteria "B" and "C" of Section 12.06 and 12.09. (Tr. 23.) The ALJ found that Claimant's mental disorders resulted in "mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate limitations in maintaining concentration, persistence, and pace; and her mental impairments have resulted in zero episodes of decompensation." (Tr. 22-23.) The ALJ also noted that this finding was consistent with the findings of the state agency doctors. (Tr. 23.)

III.   Claimant's RFC

In evaluating Claimant's RFC, the ALJ determined that she was able to:

Perform light exertion work activity. She is able to lift and carry 20 pounds occasionally and 10 pounds frequently. She is able to stand and walk for about 6 hours in an 8-hour day and sit for about 6 hours in an 8-hour day. She is able to perform occasional stooping. She is limited to activities that do not involve concentrated exposure to dust, fume, gases, and other odors. She is limited to simple, routine, 1 to 3 step tasks that do no involve public interaction. She should avoid hazards, due to the possibility of substance abuse relapse.

(Tr. 23.) In making this finding, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4 and 96-7p." (Tr. 23.)

The ALJ first noted that Claimant's daily activities were not limited to the extent one would expect considering that she is able to walk daily, clean house, take the bus, read books, write in her journal daily, do laundry, care for three children, and water the grass. (Tr. 24.) Also, the ALJ found Claimant's medical records and testimony at the hearing concerning drug use to be vague and inconsistent. (Tr. 24.) The ALJ found that these inconsistencies suggested that the information

provided by Claimant generally may not be entirely reliable. (Tr. 24.) Further, Claimant had worked sporadically with low earnings prior to the alleged onset of disability, which the ALJ stated "raises a question as to whether the [C]laimant's continuing unemployment is actually due to medical impairments." (Tr. 24.) Overall, because the ALJ found Claimant to be unreliable, he based his findings regarding her RFC on the medical assessments of record. (Tr. 24.)

Next, the ALJ addressed the reports of treating, examining, and non-examining medical sources. (Tr. 24.) On June 16, 2005, social worker Kim Christiansen ("Christiansen"), M.A.[1], reported Claimant had been diagnosed with PTSD, high anxiety, and panic attacks. (Tr. 24.) Christiansen advised that until Claimant was better able to manage her anxiety she should avoid obtaining employment because she was highly reactive. (Tr. 24.) The ALJ found "[a]ssessments from a social worker, without concurrent review and signature from a medical doctor, are not considered to be from an acceptable medical source[.]" (Tr. 24.) Thus, the ALJ gave her opinion very little weight in determining Claimant's RFC. (Tr. 24.)

A medical doctor, Linda Jensen ("Jensen"), M.D., examined the record for the state agency on October 12, 2004. (Tr. 25.) Jensen concluded that Claimant: "retained the physical RFC to perform light exertion work activity with the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit each for about 6 hours in an 8-hour day; with occasional stooping." (Tr. 25.) A second state agency doctor, Martin Kehrli, M.D., ratified these findings on November 29, 2004. (Tr. 25.)

On October 12, 2004, a state agency psychologist, Robert Henry ("Henry"), Ph.D., reported that Claimant "has an average intelligence and no significant cognitive deficits, but affective

---

[1] Christiansen also is Certified Alcohol Drug Counselor ("CADC").

components and use of drugs limit her to simple repetitive work of 1 to 3 steps." (Tr. 25.) Henry also noted that Claimant has limited attention and concentration, which precludes jobs requiring sustained concentration. (Tr. 25.) Claimant described bouts of social anxiety disorder to Henry, but also indicated she was able to interact casually on a social basis. (Tr. 25.) Henry concluded that Claimant would be able to work jobs that do not require direct public contact and advised she avoid jobs that require working near hazards because of relapse potential. (Tr. 25.) A second state agency doctor, Paul Rethinger, Ph.D., a psychologist, affirmed these findings on November 29, 2004. (Tr. 25.) The ALJ found the state agency doctors' assessments to be based on a thorough review of the evidence and to be consistent with the evidence of record. (Tr. 25.) Accordingly, he assigned the state agency evaluations "significant" weight. (Tr. 25.)

Treating doctor Patrick McGowan ("McGowan"), M.D., was given very little weight in determining Claimant's RFC. (Tr. 25.) McGowan's assessment was found "not to be supported by medically accepted clinical and/or laboratory diagnostic studies and inconsistent with other substantial evidence in the case record." (Tr. 25.) Moreover, much of the information used in making his assessments were said to have come from Claimant's own subjective reports without any objective corroboration. (Tr. 25.) Thus, the state agency doctors were deemed to be far more credible. (Tr. 25.)

Examining doctor Christopher Tongue ("Tongue"), Ph.D., opined that Claimant's symptoms and functioning support a diagnosis of PTSD. (Tr. 25.) He reported "the mental status examination did not reveal significant cognitive impairment; however, her attention and concentration was poor due to her anxiety." (Tr. 25-26.) The ALJ noted Tongue's opinion was formed after a one-time examination, Tongue had no treating relationship with Claimant, and the majority of Tongue's

information regarding Claimant's history came from her uncorroborated statements. (Tr. 26.) Nonetheless, the ALJ found much of Tongue's opinion consistent with the RFC as set forth in the decision. (Tr. 26.)

IV.   Step Four

At Step Four, the ALJ concluded that Claimant is unable to perform any past relevant work, including her work as a Wal-Mart cashier. (Tr. 26.) The ALJ cited the VE's evaluation that being a cashier is classified as semi-skilled, light exertion work activity and an individual with the Claimant's vocational characteristics and RFC could not return to her past relevant work. (Tr. 26.)

V.   Step Five

At Step Five, the ALJ concluded that considering Claimant's age, education, work experience, and RFC, there are jobs that exist in "significant numbers in the national economy that Claimant can perform." (Tr. 26.) The ALJ cited the VE testimony that a hypothetical individual with Claimant's limitations could perform the jobs of hand packager and a small products assembler. Therefore, the ALJ found Claimant not disabled.

*Discussion*

Claimant argues the ALJ applied improper legal standards and his decision was not supported by substantial evidence. Specifically, Claimant asserts: (1) the ALJ erred in improperly rejecting[2] the opinion of Claimant's social worker Christiansen, (2) the ALJ erred in improperly rejecting the opinion of Claimant's treating physician McGowan, (3) the case must be remanded for proper consideration of new evidence, and (4) the VE failed to state whether his testimony was consistent

---

[2] Claimant uses the phrase "rejecting the opinion," while the ALJ explained that he was assigning "less weight" to the opinion's of Christiansen and McGowan. The distinction is irrelevant as these two phrases are used interchangeably throughout the cases cited by the court.

with the DOT. Claimant's challenges are to Steps 3 and 5 of the ALJ's 5-step sequential analysis.

1.      Christiansen's Opinion

The Code of Federal Regulations ("CFR") distinguishes between opinions from acceptable medical sources and those from other sources. Licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are the only acceptable medical sources according to the regulations. 20 CFR § 416.913(a). Other sources include: nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. 20 CFR § 416.1513(a). Christiansen falls into the category of "other sources." The ALJ cited to 20 CFR § 416.913(a) in reaching his conclusion that "[a]ssessments from a social worker[3], without concurrent review and signature from a medical doctor, are not considered to be from an acceptable medical source, and though considered, such reports usually do not receive as great an amount of weight, than as those reports from acceptable medical sources." (Tr. 24.)

Claimant argues the ALJ erred in rejecting the opinion of Christiansen as an other source. Claimant contends that SSR 06-3p recognizes that under specific circumstances, the opinion of an other source can outweigh the opinion of an acceptable medical source. Claimant states: "Since the ALJ was obviously unfamiliar with this new SSR, this case should be remanded for proper consideration of this opinion under SSR 06-3p." (Pl.'s Br. at 14.)

SSR 06-3p identifies factors that apply to the consideration of opinions from both acceptable medical sources and other sources. 71 Fed. Reg. 45593 (Aug. 9, 2006). Those factors include: the

---

[3] The ALJ refers to Christiansen as a social worker and Claimant refers to her as a counselor. Any distinction is irrelevant, however, as either title qualifies Christiansen as an other source under the CFR.

degree to which the source presents relevant evidence to support an opinion; how consistent the opinion is with other evidence; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. *Id*. at *45595. SSR 06-3p further states:

> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an acceptable medical source depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

*Id*. at *45596. SSR 06-3p acknowledges that an opinion from acceptable medical source may be outweighed by an other source. *Id*. Whether this is the case, however, depends on an evaluation based on the factors discussed above. *Id*.

In this case, the ALJ explicitly stated: "Christiansen's opinion is inconsistent with the other medical evidence of record." (Tr. 24.) This statement directly implicates two of the factors laid out in SSR 06-3p, *i.e.*, how consistent the other source opinion is with other evidence and other factors that tend to support or refute the opinion. Christiansen found Claimant highly reactive and advised her against obtaining employment until she was better able to mange her anxiety. This conflicts with the assessments of the VE and state agency psychologist Henry, both of whom found Claimant capable of obtaining employment. The ALJ must resolve conflicts in the medical testimony and his decision must be upheld if it is based on substantial evidence. Here, the ALJ's analysis is consistent with SSR 06-03p as he effectively considered those factors of SSR 06-03p which he found relevant to resolving the question of Christiansen's testimony. Accordingly, Claimant's argument are rejected and the ALJ's decision to reject Christiansen's opinion as inconsistent with the other medical evidence of record is not disturbed.

2. McGowan's Opinion

Claimant argues that the ALJ erred in rejecting the opinion of her treating physician McGowan. Claimant first argues that the ALJ's reasons for rejecting the opinion of McGowan were legally insufficient under *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995). Claimant next argues that the ALJ did not specify what other clinical and/or laboratory tests he would have liked from McGowan and "if he wanted something more, he should have completed his duty to develop the record by ordering those test." (Pl.'s Reply Br. at 2) (*citing* 20 C.F.R. § 404.1527(c)(3)).

The ALJ noted that McGowan reported on June 11, 2004, that Claimant should avoid any prolonged standing, sitting, walking, or lifting greater than 10 pounds. However, the ALJ concluded that:

> Because McGowan's opinions are not well supported by medically acceptable clinical and/or laboratory diagnostic studies and are inconsistent with other substantial evidence in the case record, his opinions cannot be given controlling weight. [I]t appears that much of the information McGowan used in making his assessments came from the claimant's own subjective reports without any objective corroboration. In addition, McGowan's opinion contrasts sharply with the assessment provided by the State Agency doctors.

(Tr. 25 (citation omitted).) Thus, the ALJ assigned McGowan's opinion "very little" weight in determining Claimant's RFC.

"The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (*quoting Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). The Ninth Circuit has found specific and legitimate reasons when "[a]n ALJ [rejects] a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*

*v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal citation and quotation marks omitted).

Similar to *Tommasetti*, in this case, the ALJ provided specific and legitimate reasons for rejecting McGowan's opinion. The ALJ stated that McGowan's assessment "came from the [C]laimant's own subjective reports without any objective corroboration." The ALJ had previously called into question the credibility of information provided by Claimant based on inconsistencies between her medical records and testimony at the hearing. A review of McGowan's records reveals that they largely reflect Claimant's reports of pain. Thus, the record supports the ALJ's adverse credibility determination and limited rejection of McGowan's opinion.

Moreover, SSR 96-2p did not require the ALJ to give deference to McGowan's opinion, because the ALJ appropriately found that McGowan's opinion was not well supported by medically acceptable clinical and laboratory diagnostic tests. *See* SSR 96-2p, 1996 WL 374188, at *2 (explaining that it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques). Contrary to Claimant's assertion, the ALJ had no duty to re-contact McGowan for further tests. The duty to re-contact a treating physician is triggered only when the evidence received from the physician "is inadequate for [the Commissioner] to determine whether [the claimant is] disabled." 20 C.F.R. § 404.1512(e); *see also Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Here, the record was adequate given the reports of other examining and non-examining medical sources. Because the record was adequate, the ALJ was allowed to make a proper evaluation of Claimant's disability claim. Accordingly, the ALJ did not err by failing to re-contact

McGowan for further tests.

3.  Claimant's Additional Evidence

Claimant contends that additional evidence was submitted to the Appeals Council that established that the ALJ's decision was incorrect. The evidence consists of a letter from Claimant's treating physician McGowan, who wrote that:

> Cynthia Press is a patient under my care and has long-standing issues with degenerative disc disease and now with spinal stenosis. She is severely limited in walking any distance, bending, as well as sitting, or standing for any length of time. She has had recent clinical depression and suffers from chronic pain. She has had significant difficulty as well, according to her psychologist, coping with underlying psychiatric issues because of this ongoing pain. Also frustrating to her, her insurance has made it not possible for her to obtain pain management resources and neurosurgical evaluation and treatment. These problems have been ongoing for several years and are expected to continue.

(Tr. 469.) Claimant asks the court to remand the case so that the ALJ can consider the new evidence.

Consideration of additional or "post-decision" evidence is governed by U.S.C. § 405(g), which provides in pertinent part:

> The court. . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g) (2008). The Ninth Circuit addressed post-decision evidence in *Mayes v. Massanari*, 276 F.3d 453 (9th Cir. 2001). The court in *Mayes* held that post-decision evidence must bear directly and substantially on the matter in dispute. *Id*. at 462. Further, the claimant must demonstrate that there is a reasonable possibility the new evidence would have changed the outcome of the administrative hearing. *Id*.

Claimant makes only one argument pertaining to her post-decision evidence. She cites

*Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000), for the proposition that whenever post-decision evidence is presented the proper remedy is to remand the case to the ALJ for consideration. This citation, however, fails to address the applicable legal standard; Claimant never demonstrates she had good cause for failing to incorporate the evidence into the record in the prior proceeding. Moreover, Claimant failed to demonstrate that there is a reasonable possibility the new evidence would have changed the outcome of the administrative hearing.

In any event, the court finds that the outcome would not have been different. McGowan's post-decision opinion stated above is a summary of his 2004 opinion that was before the ALJ. (*See* Tr. 236 and 469.) It differs in only one respect: McGowan's post-decision opinion states "[s]he has had significant difficulty as well, according to her psychologist, coping with underlying psychiatric issues because of this ongoing pain." (Tr. 469.) Based on this statement, Claimant asserts that "McGowan has pointed out the complicated interrelationship between the pain caused by her physical, objectively demonstrated problems, and her psychological condition."

Claimant's assertion does not properly characterize the post-decision evidence. McGowan's statement makes a single-sentence reference to an unnamed psychologist and does not explain the "complicated interrelationship" between Claimant's physical and psychological problems such that the court can conclude that this is new evidence that, if considered by the ALJ, reasonably would have changed the outcome below. This conclusion is supported by the fact that state agency psychologist Henry had previously evaluated Claimant for the purposes of the proceeding before the ALJ. Accordingly, the court concludes a remand to the ALJ for consideration of Claimant's post-decision evidence is not warranted.

4.     The VE's Testimony

Claimant argues that the ALJ erred by failing to ask the VE whether his testimony was consistent with the DOT. The Commissioner concedes that the ALJ failed to do so, but contends Claimant failed to identify any apparent conflict and that Claimant is precluded from raising this argument by the invited error doctrine. (Def.'s Br. at 12-13.)[4]

SSR 00-4p provides that "[w]hen a [VE]. . . provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that [VE]. . . evidence and information provided in the [DOT]." SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added). SSR further provides that the adjudicator will ask the VE if the evidence he or she has provided is consistent with the DOT and obtain a reasonable explanation for any apparent conflict. *Id*.

In *Massachi v. Astrue*, the Ninth Circuit first addressed the question whether: "in light of the requirements of SSR 00-4p, an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT." 486 F.3d 1149, 1152 (9th Cir. 2007). The court in *Massachi* joined the Third, Seventh, and Tenth Circuits[5] in holding that "an ALJ may *not*." *Id*. (emphasis added). Where the ALJ does not ask the VE whether their testimony conflicts with the DOT, the court cannot determine whether the

---

[4] The basis of the Commissioner's argument is that Claimant requested Specific Vocational Preparation ("SVP") numbers in the proceeding before the ALJ, but did not request the DOT numbers pertaining to the jobs of hand packager and small products assembler. SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, Appendix C, 1991 WL 688702 (Westlaw).

[5] *See Rutherford v. Barnhart* 399 F.3d 546 (3d Cir. 2005); *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006); *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005).

ALJ properly relied on the VE's testimony.[6]  *Id*. at 1153-54.  The proper remedy in this situation is a remand of the case so that the ALJ can perform the appropriate inquiries under SSR 00-4p. *Id*. at 1154.

The court finds the Commissioner's argument pertaining to the invited error doctrine unavailing.  The invited error doctrine provides that a party may not request review of errors for which they are responsible.  *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002).  However, the error in this case was that of the ALJ and not the Claimant.  As *Massachi* and SSR 00-4p make clear, it is the ALJ's *affirmative responsibility* to specifically ask whether the VE's testimony conflicts with the DOT.  Since the ALJ did not adhere to this requirement, the court cannot determine whether the ALJ properly relied on the VE's testimony.  Accordingly, the case is remanded so the ALJ can perform the appropriate inquiries under SSR 00-4p.

## Conclusion

Based on the foregoing reasons, this case is remanded so that the ALJ can apply SSR 00-4p's requirements and determine whether the jobs identified by the VE are consistent with the definitions in the DOT and Claimant's limitations.

DATED this 12th day of August, 2010

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge

---

[6] The Commissioner did not argue that the ALJ's failure was harmless error.  In failing to do so, the Commissioner has given the court no basis upon which to evaluate whether the error was harmless and the court declines to seek one out.